Number 10-1784, Ms. Ayer, is that correct? Ayer. And Mr. Haberman. Take your time, we're in no hurry. Whenever you're ready, you can come on up. Good morning, your honors. My name is Katie Ayer and I represent the appellant Robert Miller. I would like to reserve three minutes for rebuttal. That's fine. Before you get into your arguments, sir, I have a question, a factual question. In the appendix at page 814, it says that on, there's an entry, September 29, 2004, and this is the PA history of Mr. Miller. On September 29, 2004, it shows retired. Was he, in fact, retired as of that date? No, your honor, he was not. I'm not sure why that appears in the record. Mr. Miller's retirement date is still a number of years into the future. And that's, I don't believe that's a disputed issue in this case. So that's a docket error, if you will? Absolutely, your honor. Again, I believe it's undisputed that Mr. Miller's retirement date is several years into the future still. Okay, thank you. Thank you, your honor. Under ERISA, planned administrators are granted certain advantages, but they are also given responsibilities. In this case, defendants violated those responsibilities again and again and again. Now, in 03, for a while, there was a termination of benefits, and they were restored very shortly thereafter. Was the reason for the termination because there was a lack of cooperation or what? The defendants had sent Mr. Miller a notice to his PO box. Mr. Miller never received that notice. And basically, there was a miscommunication. You know, he never received the notice that they were looking for more information. They never received any information from him. And as your honor observed, it was very shortly thereafter that his benefits were reinstated. At that time, Mr. Miller submitted records, substantive records on the issue of disability. They were reviewed by the defendants, and the defendants found that he continued to be disabled as of that time, that he continued to be incapable of performing as a commercial airline pilot. I would note that although there are many errors here today, I would like to focus my argument here on two specific issues. First, the defendants' termination of Mr. Miller's benefits in 2006 on the basis of his failure to seek FAA recertification. And second, the defendants' very serious violations of ERISA's requirements of full and fair review. But before proceeding to address these two issues, I would first emphasize to the Court that this is a case in which the big picture matters. Just as this Court stated in Post v. Hartford, this is a case in which both the sheer number of irregularities and the specifics of those irregularities truly call into question the defendant's conduct in this case. With this in mind, I would like to begin. May I ask a question at this point? Certainly, Your Honor. Does American Airlines, or did American Airlines, require that to be a pilot in regular service, you had to have an FAA certification? Your Honor, as a matter of federal law, commercial airline pilots are required to have... I'm not talking about federal law. I'm talking about American Airlines. Does American Airlines require that its pilots have an FAA certification? Absolutely, Your Honor. Again, that's required of any commercial airline in the United States. And again, what I would... So I would like to start at this time by addressing that issue. This Court has made clear that it is a fundamental violation of ERISA to impose requirements on a plan participant that are not set forth in the plan itself. In this case, the limited bases on which Mr. Miller's benefits could be terminated are set forth very clearly and specifically in the summary plan description. Those bases simply do not include a failure to seek FAA recertification. And indeed, the defendants have conceded that failure to pursue... It said injury verified through qualified medical authority that prevents a pilot from continuing to work as a pilot for the company. Now, if he cannot get an FAA certification, he's not qualified to work for the company then. Certainly, Your Honor, we would agree that that would be the case. That is, however, not the issue... Well, I'm not so sure. If the FAA won't certify a person because of a medical condition and he can't work as a pilot, why isn't that an issue? And absolutely, Your Honor. That hasn't been the focus of the proceedings here, but I would note, and we cite in our brief, that under the regulations, the FAA's regulations, a history of psychosis is by itself disqualifying for an FAA license. And while such a history can theoretically be waived, the defendants' own witnesses specifically testified that they have never seen the FAA grant a waiver under the circumstances of this case. Counselor, didn't your own doctor, Dr. Gonzales, first raise this FAA certification issue in his letter of 2003? Your Honor, respectfully, whether or not the issue was raised by Mr. Miller's doctor, it's clear that it was not a valid basis for terminating benefits under the plan. I don't disagree with you on that, but my point is, didn't Dr. Gonzales first raise this in his letter when he indicated that Mr. Miller was asymptomatic, he wasn't taking the medication, he was okay? I think he said something to the effect that he could return as a pilot, but he didn't have his FAA certification yet. And this was as of, like, about 2001. He was piloting, I think, like in 2003, but he said as of 2001, he was asymptomatic. I said, didn't the doctor first, didn't Dr. Gonzales first raise that? Dr. Gonzales did raise this issue, and at the time, the defendants reviewed Mr. Miller's records, and they concluded that he was not safe to return to work and that his benefits should be continued. That was in 03. That was in 03. That was after the temporary discontinuance and reinstatement. Yes, Your Honor. And then again in 2004, they again reviewed his benefits, and they again concluded that he was not safe to return to work and that his benefits needed to be continued. I can't speak for Judge Weiss, but perhaps the issue that he was trying to raise and the issue that I have in my mind is you've sort of disavowed this FAA certification issue, but it seems to me that under these circumstances, if Mr. Miller was disabled and didn't yet have the FAA certification, regardless of what the level of disability was in that period of time, without the FAA certification, he remained disabled under this plan. Absolutely, Your Honor. We would absolutely agree with that. Again, under the regulations, a history of psychosis is a permanently disqualifying condition, and again, although a waiver in theory could have been granted, the record is undisputed that the defendants' own witnesses had never seen it granted under the circumstances. All right, all right. If you agree with that, then why isn't it correct for the plan then to say, well, wait a minute, everybody seems to agree that Mr. Miller no longer has the psychosis that took him off the plane, but he isn't doing anything to get his FAA certification, therefore we're not going to continue his disability. Why is that an incorrect policy? I would say two things, Your Honor. First, the plan itself never specifies that you need to pursue your FAA certification in order to obtain continued benefits. The defendants themselves never told Mr. Miller, look, you need to go back and try to get FAA certification. They just terminated his benefits. And then on appeal they turned around and relied on an entirely different issue as the basis for sustaining that termination. So there's a real notice problem, and that's precisely the type of issue that this Court has looked to in saying that where you have a requirement that's not set forth in the plan, that can't be the basis for terminating benefits. Here's my problem with this case. This is standard. The plan did what the plan did, and the record's a little bit murky. But yet on the other hand, it seems pretty clear that everybody that they took the opinion, they took the position he was asymptomatic, wasn't taking drugs, didn't do anything to get his certification, and therefore he's no longer providing proof of continued disability, and therefore we're going to discontinue the benefits. Why is that arbitrary and capricious? I have two responses, Your Honor. First of all, the issue of him being asymptomatic was never raised to Mr. Miller at the time of the termination of his benefits. Under ERISA, Mr. Miller had only the opportunity to respond to what was clearly addressed in the initial termination letter, and that was only his failure to seek FAA recertification, which is again a basis that the defendants have conceded is not a valid grounds for terminating benefits under the plan. In that same notice, the defendants identified only a very small subsection of the records that they now seek to rely on before this Court. And again, Mr. Miller, as a result, did not have any opportunity to address those records. As Judge Caputo disputed in his opinion, that letter says in the second sentence, and I'll read it, however, we are unable to verify either the existence of a continuing medical disability or your continued substantial progress towards obtaining your FAA medical certification. And, Your Honor, I would submit that that language is so general as to be entirely meaningless. And the proof of that is that the very author of the letter at deposition could not figure out any specific basis why Mr. Miller's benefits were terminated, aside from the issue of FAA recertification. And indeed, the record is also undisputed that Mr. Miller himself didn't understand the basis for the termination of his benefits. He went to the defendants. He said point blank, I got the letter, I read it, I don't understand what the basis was for the termination of my benefits. And instead of taking the opportunity to go and give Mr. Miller further information to correct any error as to the issue of FAA recertification, defendants refused point blank to provide him with any further information. They just referred him back to the letter that they now concede contained erroneous advice that he needed to pursue FAA recertification and that this would get his benefits reinstated under the plan. May I go a little bit to the side here now? You have a situation where two doctors, a psychiatrist and a senior medical examiner, said that the plaintiff, Mr. Miller, was able to return to work as a pilot. You have Dr. Gonzalez who said that he was not able to return to work as a pilot. Now doesn't the plan require that if there is a dispute of that nature that the administrator makes the decision? I believe Your Honor is referring to the so-called final and binding provision in the plan. Is that correct, Your Honor? Yes. If the plaintiff disagrees with the American Airlines medical director, then American Airlines goes to an outside source and has two opinions saying that he is qualified to be a pilot and the plaintiff relies on his own doctor, Dr. Gonzalez, who says he is not. Doesn't that get to the basic point of this whole case? Who decides whether he is qualified to be a pilot or not? I have three responses to that, Your Honor. The first is that both this court and many other courts have addressed comparable final and binding language and have found that it results simply in arbitrary and capricious review. These types of plan language provisions are very common under ERISA. All it means is that at the administrative level, the plan administrator or whatever entity is designated is the final entity. In fact, the defendant's own witnesses testified that in this case that they didn't treat this provision even as being final and binding at the administrative level, that they felt perfectly free to go out and get more information where they felt it was warranted. Finally, I would note that this provision only purported to address the issue of whether Mr. Miller had a psychiatric condition and that the outside reviewers did not address one of Mr. Miller's continuing diagnoses, anxiety disorder, NOS. So the outside report cannot possibly have been final and binding as to an issue that it did not address. I see that my time has expired. Thank you very much. Mr. Haverman. Thank you, Your Honors, and good morning. My name is Donald Haverman. I'm here for the American Airlines Appellees. Let me just ask you at the outset sort of the elephant in the room question. Would we even be here today if Miller had applied for FAA certification and had been turned down? Unlikely. Unlikely. Did you see any possible way he would get certification? Because the doctors from Western Medical Evaluators said that he is capable of getting recertified. Well, Dr. Crane, I mean, they looked at it. It was a record review, right? It was a record review. That's correct. And Crane stated that Miller could have another psychotic episode. He assumed in the report that he had dealt with the emotional stress that led to the first psychosis, and then Dr. Seskin noted that it was possible that the FAA would recertify Miller and concluded that he was not really disabled because he didn't seek FAA certification. Exactly so. Well, if 10 times 0 is 0, I mean, if I can't – maybe I'm mistaken, but is there anything that shows that this person has a 1 in 100 chance of getting recertified? The American Airlines plane? The only thing that the record shows, and that is the Western Medical Evaluators reports, I take that back. Dr. Gonzalez suggested that if he could get recertified, he's capable of returning to work. He said that early on. In 2003. Yes, exactly so. He did not say that in 2006. No, he changed his mind. Well, he would say he clarified his report. He completely reversed his position. He was asymptomatic. He was doing well. He was feeling good. He's capable of returning to work. And then in 2006, when he filed his decision. Isn't that the relevant period of time, though, when you made the decision? Isn't that the relevant period of time when you made the decision? Excuse me. Go ahead, Jeff. Yeah. The word asymptomatic keeps popping up in the record. What do you mean by asymptomatic? I can think of any number of cases of a high school football star who is asymptomatic. He has no heart symptoms at all and drops over dead in the middle of a game. So how can you say that asymptomatic means anything other than the complaints voiced by the patient? I don't think so, Your Honor. I think asymptomatic suggests that his psychiatrist concluded he was not showing any symptoms of mental illness. Okay. And symptoms are what the patient complains of. It's not a sign. It's a symptom. It certainly is symptoms. I just think that you muddied up the waters by talking about asymptomatic. Well, Your Honor. When you have a condition that nobody can go into the brain and say he has a psychosis and he's never going to have another one. In January of 2003, Judge Weiss, Dr. Gonzalez said that he was showing no signs of mental illness. Okay. And that was as a result of Dr. Gonzalez's ongoing monitoring of Mr. Miller. He was not engaging in any treatment for psychosis at that point in time. What he was doing was monitoring. None of the doctors from WME talked about signs. They all talked about asymptomatic. Right. And to the medical profession, asymptomatic means that the individual is not showing signs of mental illness. And that is the basis. Right. Signs. I believe that's the answer, Your Honor. No, I think it's a very ambiguous phrase, and I think you're mistaken and relying on it too much. Go ahead. I'm sorry. Well, as I said, and as — Okay, I'm going to go back to the point that our standard review, and I mentioned that to opposing counsel, is arbitrary and capricious. But this determination of ineligibility was made in 2006. Yes. Don't you really have to deal with what you have in front of you in 2006? Yes. You may have said Dr. Gonzalez changed his opinion, but he's saying in 2006 that he shouldn't go back to work. That he did. And, you know, the other doctors who you brought in didn't evaluate Mr. Miller. They looked at these reports and came to a conclusion different than Dr. Gonzalez came on his own reports. The Supreme Court said in Black and Decker v. Nord in 2003 that plant administrators are not obliged to accord special deference to opinions of treating physicians. And in the Young case, the Young v. American International Life case, 2009, this court, the court refused to credit a treating physician's letter written in support of an administrative claim for benefits, which flatly contradicted his earlier observations and his medical records. It's arbitrary and capricious to give any weight to that letter. But you've got to rely pretty much on Dr. Suskind and not Crane. And as I said to you before, all that was noted was that Crane said it's possible the FAA would recertify him. But if we believe, and I'm not saying we know, but if we all believe that he's not going to be recertified, well, then isn't any decision taking him away from benefits going to be arbitrary and capricious almost per se? Absolutely not, Your Honor. What Dr. Suskind said was that for a first-class airman medical certificate, the medical standards say that there are to be no psychoses. And that is exactly the diagnosis at the time and place in which Western Medical Evaluators was reviewing the medical records. There was no psychoses. He was asymptomatic. He said, my own opinion, and mind you, he is an aviation medical specialist. He's contracted to do exactly this sort of evaluation, and he's licensed by the FAA to make these evaluations. My own opinion is that the FAA might well favorably regard this gentleman as capable of flying under proper supervision. So let me just, okay. Let me ask a question straight out about the other elephant in the room. If Mr. Miller was certified by the FAA, would he be rehired by American Airlines? He would still have a seniority number, and my understanding is he would automatically have a job. Okay. Judge Weiss, let me answer one other point. Your first question to Ms. Iyer about the reference in Joint Appendix 814, it's listed as retired because American regards disability to be a form of retirement. I see. Yeah. So he was receiving benefits at that point in time under the Pilot Retirement Benefit Program, and therefore he was classified as retired. So if Mr. Miller went tomorrow and attempted to be recertified and was turned down, is he then re-eligible for benefits? He is eligible to apply for an early retirement pension at age 56, I believe he's at, or a normal retirement pension at age 60. If he attempted to reapply for disability benefits, I can't answer for the committee at that point in time, as we sit here today, I don't know whether they would permit him to reapply for a disability pension, having not followed the procedures and fallen through and been determined to be not disabled before. So that's a question that would have to be addressed by the plan administrator and not me. Nowhere in your plan documents and in your definition of disability do you list eligibility or lack of eligibility for certification by the FAA. That's right. It almost seems like the plan didn't anticipate this situation. It does. It does. It does or doesn't? It does seem like the plan is not content. I got you. There's no way around it. He can't be employed as a regular pilot for the FAA certification. Which explains exactly why the letter makes reference to the FAA certification. One would think that that would have been useful information for Mr. Miller to develop on his own, to supply to American in response to the letter terminating his benefits, which said we are unable to verify your continuing diagnosis of mental illness. I guess my blink response to this case, it almost seems like I'm reading Joseph Heller's Catch-22. You know, you can't fly if you can't have your FAA license. But if you're not trying to get your FAA license, then you're not disabled. No. If you're not trying, I mean. You're not disabled because we can't verify that you're disabled and because your own doctor is saying you're disabled. And so what I said was let's assume there is verification that he can't get it. Then what happens? Let's suppose that there is what? Let's assume there is verification at some point, either now or later, that he cannot get recertified as an FAA pilot. Right. Or get his FAA certification. Then what happens? Right. I would say that he's out of luck in terms of another disability pension. But that's not my decision to make. That is the plan administrator's decision to determine whether, subsequent to this proceeding, whether he could reapply for another disability pension based upon his inability to satisfy FAA standards. I would think the answer is no. So all the more reason we ought to try to deal with this issue now. Well, the case is teed up for disposition, yes, sir. The one other point I would like to make, the other elephant in the room from my perspective, is the final and binding language. Much ado is made in the briefing about ERISA requirements and ERISA's obligations, but please do not lose sight of the Railway Labor Act component here. The Railway Labor Act, 45 U.S.C. section 152 first, specifically says that it's the duty of carriers to make and maintain their agreements with labor organizations. And that duty is enforceable in federal court. And when the plan and the collective bargaining agreement both provide that disputes over disability are to be resolved by the independent clinical authority here of Western Medical Evaluators, and that decision is final and binding, that decision is final and binding. It means what it says. American is obligated by the Railway Labor Act to maintain its agreements with the pilots union and enforce that decision. The Supreme Court has said on at least three different occasions that the section 152 first to make and maintain your agreements is enforceable in federal court. And by the way, Your Honor, ERISA does not trump the Railway Labor Act. ERISA section 514D makes expressly clear that ERISA does not supersede other federal laws. So the Railway Labor Act must be read in the same context as ERISA in this situation. And the final and binding decision of Western Medical Evaluators must be If we find, Mr. Haverman, if we find that the administrator's decision was arbitrary and capricious, what do you say that we should do with this case? Under that hypothetical. Under that hypothetical. The matter should ultimately be remanded to the administrative committee, the PBAC, for redetermination of compliance with the plan. Why shouldn't we reinstate? If we find it was arbitrary and capricious and that he was continued to be disabled, I'll expand my hypothetical. Why shouldn't we just reinstate the benefits retroactively? Well, if the court determined on its own that he is disabled, then I think I can understand why a decision to reinstate his benefits could be made. But there are no facts in this record that permit such a conclusion. And moreover, it's not the court's responsibility to decide whether he is disabled or not. It is the plan administrator's decision and ultimately Western Medical Evaluators when there is a dispute over the interpretation of the word disabled. What we have here, Your Honor, is a record that shows his own doctor saying for five years, essentially, he's no longer disabled. Using words like asymptomatic, feeling good, no signs of mental illness. You have the aviation medical specialist, Dr. Saskin, saying that Miller could get recertified by the FAA if he had applied. What conclusions do we draw from these facts? We draw the conclusions that he's not disabled, that he doesn't want to return to work, and that Mr. Miller wants to collect disability pay even though he's not disabled. Thank you very much. Mr. Heyman, I have a question. If Mr. Miller goes back to the FAA and gets a recertification, why wouldn't that relate back to 2006 so as to entitle him to continuing disability payments? If the FAA were to recertify him as eligible to fly? Is that your question? Yes, that's the question. If he takes the examination today, why wouldn't that establish, if he fails it, that he's been disabled continuously? Well, if he passed it, it would confirm all of the decisions that have been made by the plan. If he passed it, you're in the clear. But if he flunks it? If he flunks it, then it would be, I'm sorry, but we're beyond the time frames in the plan. All of the procedures in the plan were followed. Your rights are to go apply for your regular early retirement or your normal retirement pensions from American Airlines. Why would your rights have expired if the administrator made a mistake, made a mistake of law in saying that he was qualified to fly when you have the FAA saying he's not qualified to fly? Why wouldn't you simply reinstate things as of 2006? Well, several reasons, Your Honor. Starting with the plan does not, as you say, as one of your honors mentioned, does not have provisions in there that say FAA certification is or failure to receive FAA certification is a basis for determining eligibility for disability. But in the end, you're asking me to make a concession about how the plan should be interpreted in circumstances where that interpretation decision is left to the domain of the plan administrator. If Mr. Miller attempted to recertify with the FAA and it were declined, he would reapply and it would be teed up for decision by the plan administrative committee. Wouldn't that amount to an abuse of discretion, error of law on the part of the administrator in denying benefits if the FAA says he was not qualified? I would say it would be a difference of opinion because you have Western medical evaluators whose decision is final and binding. For all these reasons, we'd ask that the decision below be affirmed. Thank you, Your Honors. Thank you. Ms. Iyer? One question as you're coming up. What are you seeking? Your Honor, we are seeking the retroactive re- I'm sorry? If we were to find this was arbitrary and capricious. Your Honor, we are seeking the retroactive reinstatement of Mr. Miller's benefits. Under this Court's case law, it's clear that in a benefits termination case, the proper remedy is a retroactive reinstatement of benefits. And this issue has also been addressed by a number of other circuits. The vast majority of other circuits have also taken this approach. And as they have pointed out, where you have an arbitrary and capricious termination of benefits, the benefits have never properly been terminated. And for this reason, they must be retroactively reinstated. Which case from our circuit are you pointing to? By way of example, Gross-Muller v. International Union. In that case, the claimant's benefits were terminated. This Court found that there were violations of ERISA's requirements of full and fair review and ordered retroactive reinstatement of benefits. That's one example. We cite others in our brief as well, Your Honor. As Judge Fischer pointed out, the relevant timeframe in this case is 2006. What the records state more than three years prior to that, which are the records that the defendants are seeking to rely on before this Court, is simply irrelevant. At the time in 2006, the record is undisputed that Mr. Miller had an active anxiety disorder, he required stress management and sleep hygiene measures, and he wasn't released to return to work. Has he at any time, to your knowledge, attempted to be recertified as a pilot? Your Honor, that is not in the record that we have here today. The defendants did not seek to depose Mr. Miller, and so there is no evidence one way or another on that issue. As to the issue of FAA certification, I would note that the defendants' witnesses testified at deposition that they did not believe it was sufficient for a person to be unable to obtain FAA certification as a basis for obtaining that that would not automatically qualify them for benefits. So basically what they're looking for here is to have it both ways, to say you didn't apply, so that's going to be held against you. But even if you applied and failed, we're not going to find that you're eligible for benefits. Again, this was a requirement, a purported requirement that was never communicated to Mr. Miller. It wasn't a part of the plan. And under this Court's precedence, it was arbitrary and capricious as a matter of law to rely on it in terminating Mr. Miller's benefits. Ms. Metincyster, is there any reason why Mr. Miller could not apply at this time for FAA certification? Your Honor, again, I don't think that's no. Certainly there's no reason he could not apply for FAA certification at this time. However, that's not what's at issue in this case. I know it isn't you keep dancing around it, but if Mr. Miller went out and flunked the test today, you say he should be entitled to full benefits, so why not go out and take the test? Again, Your Honor, this requirement, this purported requirement, was never communicated to Mr. Miller at the time. Because we have an ERISA action, the record closed as of the time of the administrative record below. Your answer is he doesn't want to try? Absolutely not, Your Honor. Again, we don't have the record here before this Court. The defendants didn't choose to depose Mr. Miller. Mr. Miller, in his appeal submission specifically, said to the defendants – This would be in the record. What he's asking you is a forward question. So this would not be in the record automatically. Why not give it a go tomorrow? Again, Your Honor, I think the likelihood that the FAA would grant certification under the circumstances is exceedingly low. Their own regulations state that a history of psychosis – and I would correct Mr. Haverman on this point – it's not simply psychosis itself, but a history of psychosis is categorically disqualifying. Mr. Miller did specifically address that issue in his appeal before the defendants. But again, the defendants have repeatedly disavowed that this is a valid basis for terminating benefits under the plan. And on the substance, there's ample reason to think that Mr. Miller was not capable of resuming work. I would note in conclusion that under this Court's precedence, it's not only the substance that matters. It is the procedural, substantive, and structural errors that must also be considered on arbitrary and capricious review. And this Court has not hesitated to grant a retroactive reinstatement of benefits where there are serious errors, as there are in this case. Thank you. Thank you to both counsel for well-presented arguments and very well-done briefs on both sides. We'll take the matter under advisement. And because we're going to be conferring very shortly after this oral argument, I would ask if the courtroom could be cleared.